IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | **4:22CR3013** |
| vs. | |
| KENNETH BRINTON, | **FINDINGS, RECOMMENDATION, AND ORDER** |
| Defendant. | |

Defendant has moved to suppress all statements given to law enforcement while he was in custody at the Nebraska Department of Corrections, arguing the questioning violated his Sixth Amendment right to counsel. The government bears the burden of proof as to this claim. The court will set an evidentiary hearing on this issue.

Defendant also moves to suppress all evidence seized from his residence and his storage shed during searches conducted pursuant to warrants issued by the Saline County Court. Defendant does not claim the warrants were invalid because the applications included false information or concealed information material to the court's probable cause finding. Rather, Defendant claims the applications lacked a sufficient showing of probable cause, and no reasonable officer could rely in good faith on the warrants as authorizing the search of Defendant's home and storage shed. The warrant applications, warrants, and warrant returns are filed of record. (Filing No. 36). After reviewing those documents, for the reasons discussed below, Defendant's Fourth Amendment claims should be denied without a hearing.

ANALYSIS

A.    Statement of Facts

The challenged searches were conducted pursuant to warrants.  Therefore, "only that information which is found within the four corners of the [warrant] affidavit[s] may be considered in determining the existence of probable cause." United States v. Solomon, 432 F.3d 824, 827 (8th Cir. 2005) (citations omitted). The relevant facts from the warrant applications are as follows:

1)    Warrant to search residence-August 31, 2018 (Filing No. 36-1):

- The affiant officer, Sergeant Ken Uher, is a law enforcement officer and investigator for the Saline County Sheriff's Department with significant training and experience (more fully outlined in the warrant applications) in criminal investigations.

- On January 16, 2018, Defendant's former roommate told the affiant officer that in June of 2017:
  - the Defendant possessed 25-30 DVDs with images of pornography;
  - a red or black marker was used to label the DVDs as containing "XXX" and "hard core" images;
  - the roommate looked at some of the DVDs and saw images of child pornography (more fully described in the affidavit) involving girls who appeared to be 11 or 12 years old;
  - the DVDs were located in Defendant's bedroom;
  - Defendant had internet access in that bedroom; and
  - the residential address was 713 W. 7th St. Apt. #8, Wilber, Nebraska.

- On August 30, 2018, the mother of a 13-year-old girl contacted a Beatrice, Nebraska police officer, Lieutenant Jay Murphy, and reported,

2

- the daughter had been talking on Facebook to a sixty-year-old man by the name of Kenneth Brinton who lives in Wilber, Nebraska;
- Brinton had provided guitar lessons to her daughter; and
- the mother had read the Facebook communications between Brinton and her daughter and was concerned their relationship may go too far.

- With the mother's consent, Lt. Murphy logged into the daughter's Facebook messenger account and, posing as the daughter, communicated with Brinton. During those communications, Brinton arranged to meet the daughter in Beatrice, Nebraska and stated he wanted to perform sexual acts with her.

- Brinton showed up at the scheduled meeting location and was arrested by law enforcement. He had a cell phone with him and admitted he used it to communicate with the daughter.

- Lt. Murphy spoke to the 13-year-old daughter and read her Facebook messenger communications between Brinton, all of which revealed:
  - Brinton had digitally penetrated the daughter while in front of her house in Beatrice, Nebraska; and
  - The 13-year-old admitted that she sent Brinton a few pictures of her in her underwear and bra, and these images would be on his cell phone because Brinton used the phone to communicate with her.

- At 12:00 p.m. on August 31, 2018, the date the warrant application was signed, Lt. Murphy reported that according to a very recent report from the victim's family, Brinton had several firearms inside his Wilber, Nebraska residence.

3

- Brinton's criminal history included a prior felony conviction.

- Computers, cell phones, and other digital media storage devices within Brinton's home could contain evidence of communications with children and collected electronic files and images of child pornography.

The warrant was signed on August 31, 2018, and the search was conducted at 1:50 p.m. that day. (Filing No. 36-1, at CM/ECF p. 10). Nothing was seized, but officers did find a locked wooden cabinet located in the southwest bedroom of the residence.

2)    Warrant to search locked boxes in the residence (Filing No. 36-2).

Based on the same information in the initial residential warrant, (Filing No. 36-1), along with the discovery of the locked file cabinet found during the search conducted pursuant to that warrant, the affiant officer promptly requested an additional warrant to open and search the locked cabinet. (Filing No. 36-2). That warrant was issued on August 31, 2018, and the search was initiated at 3:00 p.m. During that search, officers found a pair of "Girl Pink Panties", evidence that Defendant was interested in and collected child pornography, and evidence indicating the Defendant possessed firearms. (Filing No. 36-2, at CM/ECF p. 11).

3)    Warrant to search Defendant's storage unit. (Filing No. 36-3)

Defendant challenges the search of his storage unit. The government states that nothing incriminating was found during that search and no evidence arising from that search will be offered at trial. As such, Defendant's motion to suppress evidence found during the search of his storage unit will be denied as moot, and it will not be further discussed herein.

4

B.    Legal Analysis

Defendant claims the warrants to search his residence and the locked cabinet were invalid based on two primary arguments: 1) The roommate's disclosure of Brinton's residential address was stale and there is nothing in the warrant application showing efforts to assure it was current; and 2) there was insufficient probable cause to search for evidence that Brinton possessed firearms.

A search warrant is valid under the Fourth Amendment if it is supported by probable cause. U.S. v. Stevens, 530 F.3d 714, 718 (8th Cir. 2008). When determining whether there is probable cause to issue a search warrant, the court must consider the totality of the information presented. U.S. v. Seidel, 677 F.3d 334, 337 (8th Cir. 2012).

> A warrant is supported by probable cause if there is a fair probability that contraband or evidence of a crime will be found in the place to be searched. . . . We assess probable cause from the viewpoint of a reasonably prudent police officer acting in the circumstances of the particular case. . . . Probable cause is a practical, factual, and nontechnical concept, dealing with probabilities. . . .The determination of whether or not probable cause exists to issue a search warrant is to be based upon a common-sense reading of the entire affidavit.

Id. (internal citations and quotation marks omitted).

Under the law, judges do not engage in a "grudging, hyper-technical" analysis of warrant applications on initial review, (United States v. Ventresca, 380 U.S. 102, 109 (1965)), and clearly not when a previously issued warrant is the subject of a motion to suppress. When "a judge has issued a search warrant upon a finding of probable cause, 'that finding deserves great deference.' " U.S. v. Proell, 485 F.3d 427, 430 (8th Cir. 2007)(quoting Walden v. Carmack, 156 F.3d 861, 870 (8th Cir. 1998)).

5

1)   Property description based on stale information

Defendant argues "[t]he staleness of the information about Defendant's address prevents anyone from finding there was a substantial basis to conclude that Defendant still resided in the same address over a year later." (Filing No. 35, at CM/ECF p. 7). He claims:

> Lacking an allegation that Defendant still resided at 713 West 7th Street, Apartment 8, Wilber, Nebraska, and the staleness of the information in the warrant suggesting Defendant had resided at that address 14 months prior, blocks a sufficient nexus between the criminal conduct alleged, and 713 West 7th Street, Apartment 8, Wilber, Nebraska, in August, 2018. Therefore, the warrant affidavit did not establish probable cause to believe that 713 West 7th Street, Apartment 8, Wilber, Nebraska, would contain evidence of, essentially, sex crimes involving children, in August, 2018.

(Filing No. 35, at CM/ECF pp. 7-8).

Here, the warrant affidavit states that on January 16, 2018, Defendant's former roommate "while living in Kenneth Brinton's residence located at 713 W. 7th St. Apt. #8 Wilber, Nebraska," reportedly saw Defendant's child pornography collection in June of 2017. Based on Defendant's interpretation of this sentence, the roommate stated he lived with Brinton at 713 W. 7th St. Apt. #8 in June of 2017, without any indication of where Brinton currently lives. But the sentence could also be interpreted as the statement of the affiant officer, Sgt. Uher, that Brinton's residence was (when the roommate lived with Brinton) and remains at 713 W. 7th St. Apt. #8, and in January of 2018, the former roommate stated he saw child pornography in Defendant's bedroom in June of 2017. Based on that interpretation alone, the affidavit identified Brinton's residential address. Moreover, according to the affidavit, the child victim's mother said Brinton lived in Wilbur, Nebraska, and the Saline County Court judge who signed the warrant certainly

6

knew Wilbur is a small, rural town in Nebraska which serves as the county seat of Saline County. The affidavit identifies Sgt. Uher as an officer in the Saline County Sheriff's Department who works to investigate crime in that county and knew Brinton is a convicted felon.

A judge reviewing a warrant application is allowed to draw "reasonable inferences" when determining if "probable cause exists to issue a warrant." United States v. Thompson, 210 F.3d 855, 860 (8th Cir. 2000). Based on common sense reading of the affidavit as a whole, a Saline County judge could certainly find that Sgt. Uher was in a position to know and was aware of Brinton's current residential address, and he correctly provided the address in the warrant application.

Defendant argues the affidavit is insufficient because it "does not particularly describe the residence as an apartment, a duplex, a house, a mobile home or provide a description as to the color, style, layout, number of stories or anything by which to identify – with particularity – the house at issue." (Filing No. 35, at CM/ECF p. 6). "The test for determining the sufficiency of the description of the place to be searched is whether the place to be searched is described with sufficient particularity as to enable the executing officer to locate and identify the premises with reasonable effort, and whether there is any reasonable probability that another premise might be mistakenly searched." United States v. Gitcho, 601 F.2d 369, 371 (8th Cir. 1979). Here, the warrant affidavit states the street address and apartment number of Brinton's residence—a description that was sufficiently specific to identify the location subject to search. Id. (holding description of the property by street address only was sufficient even though the address was technically incorrect where the officers were not likely to search the wrong location). The address of Brinton's residence was correct in the warrant application. The warrant affidavit need not also describe the appearance of the property.

7

2)    No probable cause to search for firearms

Defendant claims the warrant affidavit lacked sufficient facts to conclude evidence of a firearms crime could be located by searching Brinton's residence. Defendant argues:

> No supporting facts of Defendant's alleged firearms possession were presented in the warrant affidavit. It is "bare-bones" with respect to its firearm related allegations. Facts could have included an allegation of knowing where Defendant lived, of what rooms in his residence the guns were kept, of whether Defendant lived in a house or an apartment or a townhome or mobile home, etc., or even of how the reporting party knew anything about Defendant's firearms possession.

(Filing No. 35, at CM/ECF p. 10).

The affidavit states the victim's family reported that Brinton had several firearms in his home. The tip was not anonymous. Moreover, Sgt Uher had previously corroborated the allegations of the child victim and her mother regarding Brinton's sexual advances toward the child. So, based on the investigative results described in the affidavit itself, the Saline County judge was apprised that members of the victim's family had provided reliable information and tips to Sgt. Uher in the past. United States v. Caswell, 436 F.3d 894, 898 (8th Cir. 2006) ("When an informant has provided reliable information in the past . . ., a court may deem the informant's tip sufficiently reliable to support a probable cause determination."). The affidavit states Brinton is a convicted felon and as such, could not lawfully possess firearms. Considered in the totality, these facts provided probable cause to search for evidence that Brinton illegally possessed firearms.

And even assuming the facts did not support probable cause to search for firearms, the firearms evidence found need not be suppressed. The officers lawfully searched the residence and the contents of the locked cabinet pursuant to

8

warrants. During the search of the locked cabinet, they found and seized evidence of firearms possession found in plain view. (Filing No. 36-2, at CM/ECF p. 11)(listing "1 Gun Cleaning Kit" and "1 - .223 caliber live round of ammunition" in the warrant return for search of the locked cabinet). "[I]f, while lawfully engaged in an activity in a particular place, police officers perceive a suspicious object, they may seize it immediately." Texas v. Brown, 460 U.S. 730, 739 (1983). So, irrespective of whether firearms evidence was specifically mentioned in the search warrant, once the officers saw this evidence while searching for child pornography in the locked cabinet, they were allowed to seize it as evidence of unlawful firearms possession. United States v. Nichols, 344 F.3d 793 (8th Cir. 2003) (holding that under the plain view doctrine, officers could lawfully seize guns found under a defendant's mattress while searching for cocaine and drug-related equipment pursuant to search warrant).

   3)   Leon good faith

   Even assuming probable cause was lacking, "an officer cannot be expected to question" a judge's probable cause determination. United States v. Leon, 468 U.S. 897 (1984). Under the Leon good-faith exception, evidence seized pursuant to a search warrant issued by a judge will not be suppressed "if the executing officer's reliance upon the warrant was objectively reasonable." United States v. Proell, 485 F.3d 427, 430 (8th Cir. 2007).

   Defendant argues the Leon good faith exception does not apply to this case because the warrant application "does not indicate that anyone engaged in any activity prior to applying for the warrant [verified] whether Defendant still resided at 713 West 7th Street, Apartment 8, Wilber, Nebraska, in August, 2018." (Filing No. 35, at CM/ECF p. 9).

"Searches pursuant to a warrant will rarely require any deep inquiry into reasonableness, for a warrant issued by a magistrate normally suffices to establish that a law enforcement officer has acted in good faith in conducting the search." Leon, 468 U.S. at 922 (internal citation omitted). Suppression of evidence obtained pursuant to a warrant is appropriate only if the officers had no reasonable ground for believing that the warrant was properly issued. Id.

The challenged searches were conducted pursuant to warrants. There is no allegation or evidence that the Saline County judge "rubber-stamped" the warrants or that Sgt. Uher's affidavit misled the judge because facts within it were false or material facts were concealed. For the reasons discussed above, the officers were objectively reasonable in believing the warrant applications provided a sufficient basis for issuing the challenged search warrants. The searches conducted pursuant to the warrants issued by the Saline County judge were lawful, and the evidence obtained during the searches should not be suppressed.

Finally, to the extent the defendant is claiming any statements he made must be suppressed as fruit of alleged unlawful searches, the motion to suppress statements on Fourth Amendment grounds should be denied.

IT THEREFORE HEREBY IS RECOMMENDED to the Honorable John M. Gerrard, United States District Judge, pursuant to 28 U.S.C. § 636(b), that the **Fourth Amendment** claims within Defendant's motion to suppress (Filing No. 34) be denied in their entirety.

The defendant is notified that failing to file an objection to this recommendation as provided in the local rules of this court may be held to be a waiver of any right to appeal the court's adoption of the recommendation.

IT IS ORDERED that an evidentiary hearing as to the **Fifth/Sixth Amendment** issues in Defendant's motion to suppress, (Filing No. 34) will be held before the undersigned magistrate judge on November 18, 2022, at 9:15 a.m. in Courtroom #2, 100 Centennial Mall North, United States Courthouse, Lincoln, Nebraska. Two hours have been set aside for this hearing.

November 3, 2022.

BY THE COURT:

*s/ Cheryl R. Zwart*
United States Magistrate Judge

11